**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 4:23-CR-00167-MTS |
| v. | ) |
| | ) |
| **SCOTT R. ELLIS,** | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S SENTENCING MEMORANDUM**
**AND MOTION FOR DOWNWARD VARIANCE**

Defendant Scott R. Ellis ("Ellis"), by and through undersigned counsel, respectfully submits this memorandum to assist this Court in fashioning a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). Ellis respectfully moves this Court to grant a downward variance based on relevant sentencing factors under 18 U.S.C. § 3553. Ellis respectfully requests a sentence of 60 months.

The 39-year-old man who stands before this Court for sentencing has fully accepted responsibility for his conduct, is profoundly remorseful, and is working tirelessly to ensure he never appears before this, or any other, Court again. As aptly observed by someone who has come to know Ellis over the past few years, his addiction sponsor wrote in a letter of support that "Scott is a man who has faced his struggles head-on and has the strength and determination to lead a life of recovery and contribution." Ex. A, Letter from Cory Younger. Ellis has used this dark chapter to "lean[] into his faith journey . . . [and] become a source of encouragement to others." Ex. B, Letter from Pastor Hervera Hambrick.

1

As Congress and the Supreme Court acknowledge, this Court is charged with the responsibility of evaluating Ellis as an individual in crafting an appropriate sentence that is particularly tailored to him. *See Koon v. United States*, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue"); *see also* 18 U.S.C. § 3553(a)(1) ("The court…shall consider…the history and characteristics of the defendant").

### I.  Procedural Background

On February 26, 2025, Ellis pled guilty to one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(5). (Doc. 87). On April 29, 2025, the United States Probation Office prepared a disclosure Presentence Investigation Report ("PSR"). (Doc. 92). Both Ellis and the Government filed acceptances of the PSR. (Doc. 93, 105). Sentencing is scheduled for June 30, 2025. (Doc. 102).

### II.  Legal Standard

As this Court is aware, Congress has mandated that the sentence imposed in this case be "sufficient, but not greater than necessary" to achieve the objectives of sentencing as set forth in the statute. 18 U.S.C. § 3553(a). The United States Sentencing Guidelines, while advisory, "are no longer mandatory." *United States v. Ture*, 450 F.3d 352, 356 (8th Cir. 2006); *see also United States v. Booker*, 543 U.S. 220, 224 (2005).

As the United States Court of Appeals for the Eighth Circuit has established, the methodology this Court should follow post-*Booker* is the following:

> In sentencing a defendant, a district court must first determine the advisory sentencing range as recommended by the Guidelines . . .. Next, the district court should decide if any applicable Guidelines provisions permit a traditional "departure" from the recommended sentencing range . . .. The term "departure" is "a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines" . . .. The calculation of the initial advisory Guidelines range, along with any applicable departures, results in a "final advisory Guidelines sentencing range" . . .. Finally, in determining the actual sentence that should be imposed, a district court must consider whether the factors in 18 U.S.C. § 3553(a) justify a "variance" outside the final advisory Guidelines sentencing range . . .. As opposed to a "departure," a "variance" refers to a "non-Guidelines sentence" based on the factors enumerated in Section 3553(a).

*United States v. Lozoya,* 623 F.3d 624, 625-26 (8th Cir. 2010) (citations omitted).

In this case, the defense is seeking a downward variance to a sentence of 60 months.

### III.    Advisory Sentencing Guidelines

Ellis concurs with the conclusions of the PSR. Specifically, Ellis agrees that the total offense level is 28 and that his criminal history category is I, resulting in a Guidelines range of 78 to 97 months' imprisonment. (Doc. 92 at ¶ 82). Ellis further concurs with the Probation Office that several factors exist which could justify a downward variance in this case (*Id.* at ¶ 102).

### IV.    A Downward Variance is Warranted

As a matter of law, this Court must not presume the Guideline range reasonable, but must make an individual assessment of the 18 U.S.C. § 3553(a) factors based on all the facts presented. *Gall v. United States*, 552 U.S. 38, 50 (2007). Based upon a consideration of the statutory sentencing factors set out in 18 U.S.C. § 3553(a), a downward variance is warranted in this case. Section 3553(a) sets forth a general directive to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. Section 3553(a) then lists numerous factors that a sentencing court must consider. Especially relevant to this case, and supportive of this motion for a downward variance, are the following factors:

A. <u>The History and Characteristics of the Defendant – 18 U.S.C. § 3553(a)(1)</u>

3

As identified by Probation in paragraph 102 of the PSR, several factors exist—Ellis' age, lack of criminal history, and, therefore, his first experience with incarceration—to consider a variance under the subcategory of the history and characteristics of Ellis. Several other factors regarding the history and characteristics of Ellis are also discussed in the PSR and are noteworthy in the context of 18 U.S.C. § 3553. Specifically, the paragraphs discussing mental health and substance abuse point to characteristics of Ellis which would justify a downward variance. With respect to his mental health, Ellis has been sporadically treated for his ADHD, is undeniably suffering from clinical depression, and has made multiple attempts to take his own life. His mental health state would benefit from treatment while incarcerated, but would also benefit from the least amount of incarceration possible under the circumstances. With respect to substance abuse issues, while they are not a dominant factor in his life, the PSR notes that Ellis would benefit from RDAP services while incarcerated and he would agree with that assertion.

One characteristic not covered in the mental health or substance abuse sections, but equally as powerful, and referred to in this memorandum and the support letters, is Ellis' addiction to sexual compulsion. It is no secret that this would be a driver of the conduct for which he pled guilty, and a serious mental health drawback worthy of consideration by this Court. *See United States v. Cernik*, 2008 WL 2940854 (E.D. Mich. July 25, 2008) (varying down to probation from a Guidelines range of 46-57 months based on the finding that "continued psychological therapy, mandatory counseling with a registered sex offender therapist, and participation in relapse prevention therapy and Sexual Addictions Anonymous will be far more effective in achieving the objectives of §§ 3553(a)(2)(C) and (D) than would an extended term of imprisonment").  Ellis is committed to beating his addiction, is actively engaged in therapy, and devoted to renewal in his faith.

4

As the Court knows, heartfelt letters are not submitted for every defendant, especially one who has pled guilty to an offense like Ellis has. Yet, that is what happened in this case. Ellis has the unwavering support of his mother, his Pastor, and his addiction sponsor in this tumultuous time. Ellis' addiction sponsor notes that he is "a kind, compassionate, and loyal individual . . . [with] a sincere desire to confront his addiction and work toward recovery." Ex. A. Ellis' mom has pledged to stand by him and "help him to the best of my ability for the rest of my life." Ex. C, Letter from Sharon Morton. Ellis' Pastor writes that Ellis "has already begun walking a new path, and . . . with continued support and accountability, he will continue to be a positive influence, not only in our church but in the broader community as well." Ex. B.

B. The Nature and Circumstances of the Offense and the Need for the Sentence Imposed – 18 U.S.C. § 3553(a)(1) and (a)(2)

This Court must fashion a sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from future crimes, and to provide a defendant with necessary treatment. See 18 U.S.C. §3553(a)(2). A sentence of 60 months' imprisonment accomplishes these sentencing objectives. A sentence of this length reflects the seriousness of the offense and will certainly deter and protect the public from future criminal conduct. Ellis is simply not a defendant who will commit any crime in the future. Prior to being sentenced for this offense, Ellis was started on the right track and, thankfully, that right track eagerly awaits him upon his release. Ellis will not be in a position to fail—he will land in a position to succeed, and he will seize that opportunity and work tirelessly to ensure that he never ends up in a courtroom again.

Furthermore, it is important to note that many courts and scholars have long noted that the Guidelines applicable to child pornography charges in particular are excessively harsh. When Chief United States District Judge M. Casey Rodgers testified before the United States Sentencing

5

Commission in February 2012, she explained that she and the other judges in her district "most often" concluded that the recommended guideline range was consistent with the factors set out in 18 U.S.C. § 3553(a). *Statement of Chief United States District Judge M. Casey Rodgers before the United States Sentencing Commission* (Feb. 15, 2012) at 1-2.[1] However, she testified that this was "not the case in the area of child pornography offenses," noting that many district court judges are "increasingly imposing below-guideline sentences based on a concern over the integrity and reliability of [the child pornography] guidelines." *Id*. at 3. The central flaw, she noted, is that "the cumulative effect over time from Congress's directives, direct amendments, and the enactment of a mandatory minimum for receipt, coupled with the Commission's efforts to comply with those directives" has been "ever increasing sentences...that ferries the ordinary offender to the high end of the statutory sentencing range." *Id*. at 7. In particular, the "specific" offense characteristics that result in higher sentences are not so specific—rather, they are found in nearly every case. *Id*. at 7-10.

Judge Rodgers is not alone in her observations. She is joined by numerous federal district and appellate courts—and even by the United States Sentencing Commission itself. As the United States Court of Appeals for the Second Circuit observed with respect to the child pornography Sentencing Guidelines applicable in this case, the guideline "is fundamentally different from most in that, unless applied with great care, [it] can lead to unreasonable sentences that are inconsistent with what section 3553 requires." *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010).

In this case, the final PSR concludes that Ellis should receive enhancements because the material allegedly involved a prepubescent minor, allegedly involved sadistic or masochistic

---

[1] Available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20120215/Testimony_15_Rodgers.pdf (last accessed June 23, 2025).

conduct, because a computer was used, and because the offense involved 600 or more images. (*See* Doc. 92 at ¶¶ 31, 32, 33, 34). But, as the Second Circuit importantly recognized, these enhancements that increase Ellis' advisory Guidelines range by 13 offense levels apply in the overwhelming majority of cases:

> many of the § 2G2.2 enhancements apply in nearly all cases. Of all sentences under § 2G2.2 in 2009, 94.8% involved an image of a prepubescent minor (qualifying for a two-level increase pursuant to § 2G2.2(b)(2)), 97.2% involved a computer (qualifying for a two-level increase pursuant to § 2G2.2(b)(6)), 73.4% involved an image depicting sadistic or masochistic conduct or other forms of violence (qualifying for a four-level enhancement pursuant to § 2G2.2(b)(4)), and 63.1% involved 600 or more images (qualifying for a five-level enhancement pursuant to § 2G2.2(b)(7)(D)).

*Dorvee*, 616 F.3d at 186. Indeed, these same concerns are echoed in a recently issued United States Sentencing Commission report, published in June 2021, which notes that in fiscal year 2019, "nearly every offense (99.4%) included prepubescent victims."[2] The same report noted that in 2019, "over 95 percent of non-production child pornography offenders received enhancements for use of a computer and for the age of the victim (images depicting victims under the age of 12)" and that "the enhancements for images depicting sadistic or masochistic conduct or abuse of an infant or toddler (84.0% of cases) or having 600 or more images (77.2% of cases) were also applied in most cases."[3] The Sentencing Commission summarized,

> Constrained by statutory mandatory minimum penalties, congressional directives, and direct guideline amendments by Congress in the PROTECT Act of 2003, §2G2.2 contains a series of enhancements that have not kept pace with technological advancements. Four of the six enhancements—accounting for a combined 13 offense levels—cover conduct that has become so ubiquitous that they now apply in the vast majority of cases sentenced under §2G2.2.[4]

---

[2] United States Sentencing Commission, *Federal Sentencing of Child Pornography Non-Production Offenses*, June 2021 at 4 (available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/researchpublications/ 2021/20210629_Non-Production-CP.pdf) (last accessed May 10, 2022).
[3] *Id.*
[4] *Id.*

7

Because the majority of the enhancements which drastically drive Ellis' advisory Sentencing Guidelines range upwards apply in virtually every child pornography case, they have absolutely no unique significance to the punishment decision in this case and contravene what Section 3553(a) statutorily requires.

Specifically, in this day and age, the fact that an offender convicted of child pornography offenses did so through the use of a computer is meaningless. Even in 2009—and computers and mobile electronic devices have only become more ubiquitous since then—97.2% of offenders sentenced for child pornography offenses received the use of a computer enhancement. *See Dorvee*, 616 F.3d at 186. The fact that Ellis allegedly used a computer has absolutely no significance.

With respect to the enhancement for material depicting sadistic or masochistic conduct, the justification can only be that such images cause more harm to the victims of child pornography. But while that would perhaps be understandable, the interesting reality is that is actually not the purpose for which the enhancement was promulgated. As the United States Court of Appeals for the First Circuit explained,

> That an image 'portrays sadistic or masochistic conduct' does not require that it depict actual sadistic conduct; if that were the Sentencing Commission's intent, there would be express language to that effect. The language it did choose is to the contrary. Webster's Third New International Dictionary defines 'portray' as 'to represent by drawing, painting, engraving,' 'to describe in words,' and to 'enact.' The Guidelines simply do not require the image to be an accurate documentation of real sadistic conduct.

*United States v. Hoey*, 508 F.3d 687, 692 (1st Cir. 2007). In other words, the purpose behind the enhancement was predicated on the notion that an image that *portrays* sadistic conduct justifies a more severe sentence, regardless of whether sadistic conduct ever actually occurred.

Ellis accepts full responsibility for his crime and accepts that it is serious. He has deep

8

regret and great shame for what he did. Against this backdrop, and as demonstrated by his lack of criminal history and extra-judicial consequences already suffered, Ellis will never commit another crime. Ellis has already suffered greatly as a result of his actions, including losing his chosen profession and his marriage, and the shame and humiliation this criminal case has brought him has been difficult for him to bear.

The truth is, Ellis is a good person who exercised terrible judgment, but the stain of a federal felony conviction and being a registered sex offender is a badge of dishonor he will wear throughout the rest of his life—and it is punitive in and of itself. This is not a defendant who will recidivate even if he receives a sentence of 60 months from this Court.

C. The Need to Avoid Unwarranted Sentence Disparities – 18 U.S.C. § 3553(a)(6)

In the Eastern District of Missouri in fiscal year 2024, almost 40% of all defendants received a downward variance, and over 63% of defendants in child pornography cases received a variance. United States Sentencing Commission, Statistical Information Packet, Fiscal Year 2024, Eastern District of Missouri (available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2024/moe24.pdf) (last accessed June 22, 2025). This trend outpaces the national average for these cases by over 5%. (*Id.*). This Court should take into account these considerations regarding unwarranted sentencing disparities when fashioning a sentence that is sufficient, but not greater than necessary.

The Eighth Circuit has held that a 33% downward variance in a child pornography case is not "extraordinary" and is "within the permissible 'range of choice' available to a district court." *United States v. White*, 506 F.3d 635, 645 (8th Cir. 2007) (*quoting United States v. Kicklighter*, 413 F.3d 915, 918 (8th Cir. 2005)). Ellis is seeking only a 23% downward variance from the

9

bottom end of the Guidelines range, well within the permissible range of choice. A variance down to 60 months, based on the sentencing factors under 18 U.S.C. § 3553, would produce a sentence that does not create unwarranted sentencing disparities in this District, the Eighth Circuit, and nationwide.

V.     Conclusion

As the age-old adage goes, "justice must be tempered with mercy." Ellis accepts that he is before this Court for sentencing for a serious crime and that this Court must impose a penalty. That is justice. But Ellis also appeals to this Court's discretion to temper that justice with mercy.

One of the toughest realities to accept at any age is that, as people, we cannot go back in time to make better decisions. We have to accept the decisions we make and the consequences of those decisions. But if ever there were a defendant standing before this Court who is as remorseful as he is committed to never finding himself anywhere close to this situation again, it is Ellis.

For all the reasons set forth in the PSR and in this memorandum, Ellis appeals to this Court's discretion to grant his motion for a downward variance and impose a sentence of 60 months. Ellis respectfully submits that a sentence of 60 months is "sufficient, but not greater than necessary," and that is what the law requires. 18 U.S.C. § 3553(a).

Respectfully submitted,

**Margulis Gelfand, LLC**

 /s/ Justin K. Gelfand
JUSTIN K. GELFAND, #62265
WILLIAM S. MARGULIS, #37625
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
bill@margulisgelfand.com
*Counsel for Defendant Ellis*

10

**Certificate of Service**

I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Office of the United States Attorney.

*/s/ Justin K. Gelfand*
JUSTIN K. GELFAND, #62265
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
*Counsel for Defendant Ellis*
